UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TOMMY L. FENLEY,

        Plaintiff,

    v.                            Case No.: 2:15-cv-326
                                      JUDGE SMITH
                                      Magistrate Judge Jolson

WOOD GROUP MUSTANG, INC.,

        Defendant.

## ORDER

This matter is before the Court on Plaintiff's Motion to Facilitate Notice Pursuant to 29 U.S.C. § 216(b) (Doc. 31).[1]  Defendant Wood Group Mustang, Inc. ("WGM" or "Defendant"), responded to the Motion to Certify (Doc. 40), and Plaintiff replied in support (Doc. 41).  Plaintiff has also filed a Motion for Equitable Tolling (Doc. 48).  Defendant responded in opposition to the Motion for Equitable Tolling (Doc. 51), and Plaintiff replied in support (Doc. 53).  These motions are fully briefed and are ripe for disposition.  For the following reasons, Plaintiff's Motion to Certify is **GRANTED** and Plaintiff's' Motion for Equitable Tolling is **DENIED**.

## I.    BACKGROUND

Plaintiff has brought the present collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code Chapter 4111, *et seq*. ("Fair Wage Act").  Plaintiff seeks to recover unpaid overtime wages from Defendant for hours worked in excess of 40 hours per week for the three-

---

[1] Plaintiff's Motion to Facilitate Court Notice was officially docketed as a "Motion to Certify Class."  At this stage of the litigation, such a motion is commonly labeled and referred to as a "Motion for Conditional Class Certification."  As a shortened reference, the Court will cite to the Motion as the "Motion to Certify."

year period preceding Plaintiff's Motion to Certify.  WGM is a subsidiary of Wood Group, PLC, a publicly-traded corporation incorporated in Ohio and headquartered in Houston, Texas.  (Doc. 1, Compl. at ¶ 5).  WGM operates in the gas and oil industry, including "project management, construction management, engineering and procurement services to the offshore, onshore, oil sands, pipeline, refining, chemicals, and automation sectors."  (*Id*. at ¶ 6).  WGM employs over 8,000 people worldwide.  (*Id*.).

Plaintiff was employed by WGM from October 2013 through April 2014 as a non-exempt Welding Inspector where he was tasked with performing and reviewing welding inspections on gas pipelines.  (*Id*. at ¶ 16).  Plaintiff worked on a pipeline that stretched approximately 20 miles near Cambridge, Ohio.  (*Id*. at ¶ 17).  Plaintiff alleges that he reviewed the work of other co-workers who performed substantially similar job duties as his own.  (*Id*. at ¶ 18).  Plaintiff alleges that he and other similarly situated employees with inspector in their job title ("Inspectors") were compensated by WGM pursuant to a daily rate that did not account for overtime hours worked during a given week.  (*Id*. at ¶ 22).  Plaintiff alleges that he and other Inspectors routinely worked seven days per week and more than ten hours per day without being compensated for hours worked in excess of 40 hours per week.  (*Id*. at ¶¶ 25–26).  Plaintiff alleges that he and all Inspectors were subject to the same compensation plan.  (*Id*. at ¶ 30, 45).

In addition to the factual allegations laid out in the Complaint, Plaintiff was able to set forth more details regarding WGM's compensation policies in the instant motions because the parties engaged in limited discovery.  Specifically, WGM furnished Plaintiff with WGM pay records and policies and Plaintiff deposed a WGM corporate representative.  Plaintiff represents that said discovery reveals that all Inspectors are classified as "Non Exempt Day Rate" employees under the pay code "DAY."  (Doc. 32, Mem. Supp. Mot. Certify at 2 ("Mot. Certify

Mem.")).  Further, WGM's Overtime and Additional Compensation policy states that "**_Non-_** **_Exempt day rate Mustangers (DAY) receive a day rate that is inclusive of all hours worked,_** **_including overtime._**"  (*Id.* (emphasis in original)).  Plaintiff argues that all Inspectors are similarly situated because: 1) WGM's common pay policy is "not limited by geography, client[,] or project"; 2) they all work within the same WGM business unit, department, and job family; 3) they are all subject to the same corporate reporting structure; and 4) they are routinely scheduled to work—and do work—more than 40 hours per week.  (*Id.* at 2–3).

It appears that WGM's business structure includes five business units within its oil and gas division, one of which is named the "Pipeline Business Unit."  (Doc. 32, Mot. Certify Mem. at 5).  The Pipeline Business Unit is tasked with "design[ing] and oversee[ing] the building of the pipeline."  (*Id.*).  The Inspection Services Department is a "job family" within the Pipeline Business Unit.  (*Id.*).  All Inspectors that Plaintiff seeks to represent here are—or were— employed within the Inspection Services Department.  Plaintiff estimates that approximately 940 Inspectors fall within his proposed class definition.  (*Id.*).

Plaintiff originally sought to bring the present collective action on behalf of himself and the following class of putative plaintiffs:

> All current or former employees of [WGM], who performed work for [WGM] in the United States at any time between January 26, 2012, and the present, who were paid pursuant to a daily rate compensation system[].

(Doc. 1, Compl. at ¶ 11).  Subsequent to filing his complaint, Plaintiff amended his class definition and now seeks to conditionally certify the following class of putative plaintiffs:

> All current and former employees of [WGM] who were classified with the pay code "DAY – Non Exempt Day Rate," and who worked in WGM's Pipeline Services Inspection Department as an inspector (or an equivalent position) in the United States in any workweek between three years prior to the date of the Court's Order and the present" ("Inspectors").

(Doc. 32, Mot. Certify Mem. at 6).

3

At the present time, 37 Inspectors have opted into this litigation.  While these Inspectors hold a number of specific titles, perform a variety of tasks, and have worked for WGM in many states on projects for multiple WGM clients, each has certified that they were paid on a day-rate basis.  (*See id.*; *see also*, Docs. 17-1, 25-1, 26-1, 27-1, 30-1, 33-1, 34-1, 37-1, 38-1, 39-1, 44-1, 45-1, 46-1 ("Opt-In Consent Forms")).  Further, Plaintiff attached declarations for seven of the Opt-In Inspectors to his Motion to Certify.  (*See* Docs. 32-13 – 32-19).  Each declaration further demonstrates that the declarants routinely worked in excess of 40 hours per week, were paid on a day-rate basis, and never received overtime compensation. (*Id.*).

## II.    STANDARD OF REVIEW

Plaintiff moves for conditional certification under 29 U.S.C. § 216(b).  Section 216(b) of the FLSA provides:

> Any employer who violates the [minimum wage or overtime provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . .  An action to recover [this] liability . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b).  The Sixth Circuit has interpreted this provision as establishing two requirements for a representative action under the FLSA: Plaintiffs must (1) "actually be 'similarly situated;'" and (2) ". . . must signal in writing their affirmative consent to participate in the action."  *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (quoting 29 U.S.C. § 216(b)).  "For FLSA collective actions, class certification typically occurs in two stages: conditional and final certification."  *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012).  Conditional certification occurs at the beginning of the discovery process.

*Comer*, 454 F.3d at 546.  This "notice stage" focuses on whether there are plausible grounds for plaintiffs' claims.  *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015) (Deavers, M.J.).  A plaintiff need only show that "his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47 (citing *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002) (Sargus, J.)).  "The [FLSA] does not define 'similarly situated,' and neither has [the Sixth Circuit]." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016), *as revised* (Feb. 9, 2016).  Although courts are split as to what exactly a plaintiff must show at this stage, this Court has previously held that courts should not grant conditional certification "unless the plaintiff presents some evidence to support her allegations that others are similarly situated." *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 868 (S.D. Ohio 2005) (Holschuh, J.).  "The Court should consider 'whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists.'" *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011) (Marbley, J.) (quoting *Heaps v. Safelite Solutions, LLC*, No. 10-CV-729, 2011 WL 1325207, at *2 (S.D. Ohio Dec. 22, 2011) (Frost, J.)).  "District courts use a 'fairly lenient standard' that 'typically results in conditional certification of a representative class' when determining whether plaintiffs are similarly situated during the first stage of the class certification process." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (quoting *Comer*, 454 F.3d at 547).  Certification at this stage "is conditional and by no means final." *Comer*, 454 F.3d at 546.

If plausible grounds exist and conditional certification is granted, "plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees." *Cornell*, 2015 WL 6662919, at *1.  Final certification occurs after all class plaintiffs have opted in and discovery has concluded.  *Comer*, 454 F.3d at 546.  "At this stage, 'trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated.'" *Rutledge v. Claypool Elec., Inc.*, No. 2:12-CV-159, 2012 WL 6593936, at *3 (S.D. Ohio Dec. 17, 2012) (King, M.J.) (quoting *Comer*, 454 F.3d at 547) (*report and recommendation adopted by* No. 2:12-CV-159, 2013 WL 435058 (S.D. Ohio Feb. 5, 2013)).  At this stage, courts employ a stricter standard to determine if class plaintiffs are "similarly situated" because courts have access to much more information on which they can rely than they did at the conditional certification stage.  *Comer*, 454 F.3d at 547 (citing *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)).  "Plaintiffs generally must produce 'more than just allegations and affidavits' demonstrating similarity in order to achieve final certification."  *Frye*, 495 F. App'x at 671 (6th Cir. 2012) (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008).  Finally, a defendant "may file a motion to decertify the class [at this stage] if appropriate to do so based on the individualized nature of the plaintiff's claims." *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011) ("*Swigart I*") (Dlott, J.).

In addition to these general standards, this Court has found it proper to implement "an intermediate, or hybrid, standard that falls between the lenient first-stage and the strict second-stage review[]" where the parties have undergone limited discovery "to determine whether a class of similarly situated plaintiffs [exists]."  *Neff v. U.S. Xpress, Inc.*, No. 2:10-CV-948, 2013 WL 4479078, at *3 (S.D. Ohio Aug. 20, 2013) (Smith, J.) (citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 824 (N.D. Ohio 2011)).  This standard is flexible in its application and

only requires that plaintiff must "have advanced the ball down the field—showing that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs." *Creely*, 789 F. Supp. at 827.

## III.    DISCUSSION

Plaintiff has moved for conditional class certification and court supervised notice for:

> All current and former employees of [WGM] who were classified with the pay code "DAY – Non Exempt Day Rate," and who worked in WGM's Pipeline Services Inspection Department as an inspector (or an equivalent position) in the United States in any workweek between three years prior to the date of the Court's Order and the present" ("Inspectors").

(Doc. 32, Mot. Certify Mem. at 6).   In addition, Plaintiff has moved for an order tolling the statute of limitations (Doc. 48) for opt-in plaintiffs from July 20, 2015—the date which Plaintiff filed their Motion to Certify—to ten days after the Court issues its Order on the Motion to Certify.   (Doc. 48, Toll. Mot. at 1).   Plaintiff later requested that the statute of limitations be tolled from September 8, 2015—the date that certification briefing was finalized—to ten days after the Court issues its Order on the Motion to Certify.  (Doc. 53, Toll. Reply at 2).  Defendant opposes both motions, which are now fully briefed and ripe for disposition.

## A.    Plaintiff's Motion for Conditional Certification

Plaintiff generally argues that all Inspectors within the proposed class are similarly situated and were deprived of overtime compensation in violation of the FLSA.   Specifically, Plaintiff argues that: 1) WGM's common pay policy is "not limited by geography, client[,] or project"; 2) all Inspectors work within the same WGM business unit, department, and job family; 3) all Inspectors are all subject to the same corporate reporting structure; and 4) all Inspectors are routinely scheduled to work—and do work—more than 40 hours per week.   (Doc. 32, Mot. Certify Mem. at 2–3).  The FLSA "'provides that employers may not require employees to work more than forty hours per workweek unless those employees receive overtime compensation at a

rate of not less than one-and-one half times their regular pay[.]"  *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (quoting *Baden-Winterwood v. Life Time Fitness, Inc.,* 566 F.3d 618, 626 (6th Cir. 2009) ("*Baden III*"))[2].

Plaintiff has submitted considerable evidence in support of his assertion that other Inspectors are similarly situated to himself.  This evidence includes declarations from Plaintiff and six additional Inspectors who have already filed their opt-in consent forms.  Collectively, these declarants have held six different job titles with WGM (Welding Inspector, Safety Inspector, Utility Inspector, Electrical/Instrumentation Inspector, Chief Inspector, and Environmental Inspector); worked in nine different states (Ohio, Kansas, Nebraska, Texas, Louisiana, Wyoming, Iowa, Illinois, and Pennsylvania); and worked on projects for seven distinct clients of WGM (Tallgrass Operations, LLC, Kinder Morgan National Gas Operator, LLC, Shell Oil Products US Transportation, Sunoco Logistics Partners, L.P., Enterprise Products Operating LP, Dow Chemical Company, and EdgeMarc Energy Holdings, LLC).  (*See* Docs. 31-13–31-19, Decls.).  Each declarant states that he was paid on a day-rate basis, worked in excess of 40 hours per week, and did not receive compensation for those hours.  (*Id.*).  Importantly, all of these Inspectors fall within the same departmental hierarchy at WGM.  That is, the Inspectors all work within the Inspection Services Department, which is a subset of WGM's Pipeline Business Unit.

Plaintiff also attached various WGM policies and internal documents to his Motion to Certify that seem to support Plaintiff's allegation that all Inspectors were uniformly classified as "DAY – Non Exempt Day Rate" employees.  (*See* Doc. 31-22, Onboarding Reqs.; Doc. 31-23,

---

[2] This opinion cites three different decisions from the *Baden-Winterwood* line of cases.  The short form assigned to each decision (*Baden I, Baden II,* and *Baden III*) is based on the chronological order of the decisions and not the order in which they appear in this opinion.

Sample On-Line Payroll Data Sheets).  Classified as such, all Inspectors were paid on a day-rate basis.  (*See* Doc. 31-5, Overtime Policy at 1 ("'DAY' [Mustangers] receive a day rate that is inclusive of all hours worked, including overtime."))  These facts are further supported by the testimony of WGM's corporate representative, Laura VanDyk.  Ms. VanDyk serves as the compensation retirement manager at WGM.  (Doc. 31-6, VanDyk Dep. at 6:19).  She testified that all Inspectors were categorically compensated on a day-rate basis.  (*Id*. at 88:22–89:5).  She also confirmed that day-rate employees are paid a daily rate for each day they work.  (*Id*. at 106:4–10).

WGM counters this evidence in large part by pointing to the procedural and merit-based difficulties Plaintiff—and this Court—will ultimately face in defining and managing the proposed class of Inspectors.  Specifically, WGM spent considerable time and effort hashing out the potential exemptions that it may be able to invoke as a defense to individual—and groups of individual—Inspectors.  (Doc. 40, Resp. at 6–18).  It is not proper for the Court to consider such matters at this stage of the litigation.  *See Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-CV-432, 2015 WL 4112312, at *4 (S.D. Ohio July 7, 2015) (Sargus, C.J.) ("But, determination of whether Plaintiffs and others similarly situated qualify as exempt employees under the FLSA is a merits determination that will be considered at the second phase of certification, not at this initial conditional inquiry.").

WGM properly cites the standard of review at the conditional certification stage (*i.e.*, whether Plaintiff has made a preliminary factual showing that other similarly situated individuals exist), but then simply ignores the issues properly within the Court's contemplation at this juncture.  Defendant only raises two points that arguably weigh against granting conditional certification.  First, Defendant points out that Plaintiff is seeking to have a class certified that

consists of up to 40 different types of Inspectors. (Doc. 40, Resp. at 1). However, Defendant completely fails to argue how or why the wide range of job titles within the proposed class necessarily makes the putative plaintiffs "dissimilarly situated." Second, WGM suggests that "[i]n order to proceed as a collective action, Plaintiff must show this was all part of a common policy or plan and that individual issues do not overwhelm any common issues." (*Id.* at 2). WGM does not cite any authority requiring such a showing at this stage. In fact, the Sixth Circuit has spoken to this very issue. "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). However, "[s]howing a "unified policy" of violations is not required." *Id.* As such, Defendant's argument is not well-taken. Plaintiff is not required to show a common and unlawful policy in order to obtain conditional certification.

For the foregoing reasons, the Court finds that Plaintiff has satisfied his burden at this stage, regardless of whether the Court employs the traditional lenient standard or the "intermediate" standard suggested in *Neff*. The limited discovery conducted by the parties has revealed that all putative plaintiffs were categorized as "DAY – Non Exempt Day Rate" employees and were paid on a day-rate basis. Plaintiff's allegations are supported by his submission of seven additional declarations from Inspectors who held six different positions within Plaintiff's same job family in nine different states for seven distinct WGM clients. This evidence inarguably "advances the ball down the field" and has convinced the Court that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs. Accordingly, Plaintiff's Motion to Certify is **GRANTED**.

**B.      Plaintiff's Proposed Notice of Collective Action Lawsuit**

Plaintiff submitted a proposed Notice of Collective Action Lawsuit (the "Notice") (Doc. 31-3) along with his Motion to Certify.  WGM disputes the propriety of the following terms and conditions associated with the Notice: 1) the Notice is addressed to a broader class than that which Plaintiff seeks to have certified; 2) the Notice directs potential class members to contact Plaintiff's counsel; 3) the Notice suggests that putative class members must join the suit in order to prevent their claims from expiring; 4) Plaintiff has asked the Court to approve two separate rounds of notice by two different methods of service; 5) the Notice should include language detailing putative plaintiffs' potential liability for costs and expenses if they do not prevail on their claims; and 6) the Notice period should be 45, rather than 90, days.  The Court will address each issue in turn.

**1.      Breadth of Class**

WGM asserts that the Notice attempts to notify a broader class than that which Plaintiff seeks to have certified in his Motion to Certify.  (Doc. 40, Resp. at 18).  WGM provides no reasoning or support for this contention.  A quick review of the language in the Notice and Motion reveals that the two groups are identical.  WGM's contention has no merit and the Court finds no problem with the breadth of the Notice.

**2.      Contacting Plaintiff's Counsel**

Next, WGM asserts that the Notice directs potential class members to contact Plaintiff's counsel.  WGM cites only non-controlling case law in support of their position that proper notice should inform putative plaintiffs of their right to select counsel of their own choosing.  Here, the Notice states,

> You may also contact the Plaintiff's attorneys . . . if you have any questions or need any assistance. If you have any questions about the case, please contact Plaintiff's attorneys. **Please do not contact the Court.**

(Doc. 31-3, Notice at 1) (emphasis in original).  Two paragraphs later (and on the next page), the Notice informs putative plaintiffs of their right to hire counsel of their own choosing, albeit in passing.  (*Id*. at 2) ("While this lawsuit is pending, you may be required, with the assistance of the Plaintiff's lawyers or other lawyers of your choice . . .").

This Court has previously held that "[i]nforming potential plaintiffs of their right to choose their own counsel is an appropriate element in a notice."  *Heaps*, 2011 WL 1325207, at *9 (citing, *inter alia*, *Douglas v. GE Energy Reuter Stokes*, No. 1:07-CV-77, 2007 WL 1341779, at *4 (N.D. Ohio Apr. 30, 2007)).  Given the importance of one's right to select legal counsel of their own choosing in our legal process, the Court feels that a more conspicuous statement is warranted here.  Thus, the Notice shall read:

> "You may ~~also~~ contact the Plaintiff's attorneys . . . if you have any questions or need any assistance. *You also have the right to select counsel of your own choosing.*  If you have any questions about the case, please contact Plaintiff's attorneys *or the attorneys of your choice*. **Please do not contact the Court.**"[3]

Further, the Notice's subsequent reference to independent counsel shall remain in the final notice.

### 3.      Potential Expiration of Rights

WGM argues that the Notice "is misleading in that it suggests that putative class members must join the suit in order to prevent their claims from expiring."  (Doc. 40, Resp. at 18).  The Court is not convinced that Plaintiff is employing "scare tactics" to drum up business for Plaintiff's attorneys, as WGM suggests.  The Notice simply notifies putative plaintiffs that their claims may expire if they do not opt into the lawsuit.  The Notice sufficiently describes the nature of the claims—particularly, the statute of limitations—and the potential implications of

---

[3] The emphasized and struck-through language in this example are for identification purposes only.  The emphasized words here need not be so emphasized in the final notice.  Also, all language replaced by the ellipsis here shall remain in the final notice.

choosing whether or not to join the lawsuit. The present language, in conjunction with the additional language regarding the right to select counsel of one's own choosing, is not improper or misleading.

### 4. Volume and Method of Service

Next, WGM asserts that it is improper for Plaintiff to seek two rounds of service of the Notice by two separate methods of service. (*Id.* at 19). "Courts generally approve only a single method for notification unless there is a reason to believe that method is ineffective." *Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2012 WL 6676778, at \*4 (S.D. Ohio Dec. 21, 2012) (Black, J.) (citing *Shajan v. Barolo*, No. 10cv1385, 2010 WL 2218095 (S.D.N.Y. June 2, 2010)). However, this Court has previously allowed plaintiffs to send notice by ordinary mail and electronic mail in the interest of judicial economy. *See Swigart I*, 276 F.R.D. at 214; *see also Lemmon v. Harry & David Operations, Inc.,* No. 2:15-CV-779, 2016 WL 234854 (S.D. Ohio Jan. 20, 2016) (Smith, J.). In *Wolfram*, this Court acknowledged the general rule that notice is typically sent by a single method but still permitted plaintiffs to serve notice to current employees by ordinary mail and to former employees by electronic mail. There, this Court reasoned that permitting two methods of service "appropriately safeguards the privacy of individuals not currently a party to the case and helps ensure that all potential plaintiffs receive notice of their right to join this lawsuit." *Wolfram*, 2012 WL 6676778, at \*4. A similar approach was adopted by this Court in *Lutz v. Huntington Bancshares Inc.*, No. 2:12-CV-01091, 2013 WL 1703361 , at \*7 (S.D. Ohio Apr. 19, 2013) (Frost, J.)). In *Lutz,* this Court reasoned, "[b]y allowing e-mail notice to former employees now, the Court hopes to avoid the added step of having to resend notice in the event that a former employee's last known home address proves to be inaccurate." *Lutz*, 2013 WL 1703361, at \*7.

This Court recently relied on the aforementioned cases' reasoning when it approved simultaneous electronic and ordinary mail service in *Lemmon*.  2016 WL 234854, at *7.

Here, Plaintiff has set forth sufficient grounds to warrant "dual-method" service. Plaintiff's Motion to Certify clearly sets forth that many of the putative plaintiffs' work requires them to be away from their homes for months at a time.  (Doc. 32, Mot. Certify Mem. at 19). WGM has already provided Plaintiff with electronic and physical mailing addresses for the proposed class of Inspectors.  As such, allowing service of the Notice by email and ordinary mail casts no undue burden on WGM and the Court approves such a plan.

Plaintiff also seeks approval from the Court to send an additional "reminder notice" 45 days after the original notice is sent.  WGM argues that approving such a high volume of Court-Supervised Notice is "excessive and improperly suggests this Court's endorsement of Plaintiff's claims."  (Doc. 40, Resp. at 19).  In addition, Plaintiff has also requested that "WGM be required to post a copy of the Notice in appropriate, conspicuous, visible, and accessible places at each of its offices, shops trailers, or other locations in which Inspectors currently work during the 90 day [*sic*] notice period."  (Doc. 32, Mot. Certify Mem. at 20).

There is no "one-size-fits-all" approach to notifying putative class members in lawsuits such as this.  The ultimate goal of the Court is to provide "[a]ccurate and timely notice concerning the pendency of the collective action promotes judicial economy because it . . . allows [putative class members] to pursue their claims in one case where the same issues of law and fact are already being addressed." *Swigart I*, 276 F.R.D. at 214 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).  In facilitating notice, the Court must avoid communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Sperling*, 493 U.S. at 168–69.  As WGM points out, the Court should be

hesitant to authorize duplicative notice because it may unnecessarily "stir up litigation" or improperly suggest the Court's endorsement of Plaintiff's claims. (Doc. 40, Resp. at 19). On these grounds, the Court concludes that a "45-day reminder" notice is not warranted in this case. Similarly, WGM did not object to having copies of the Notice placed in its workplaces, but Plaintiff has not offered any evidence to suggest that electronic and ordinary mail would be insufficient to notify all putative class members of their right to opt-in to the instant litigation. *See Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011) (disallowing posted notices in the workplace where there was no evidence that service by ordinary mail was impracticable or would otherwise be insufficient). Plaintiff's reliance on *Thompson v. Peak Energy Servs. USA, Inc.*, No. CIV.A. 13-0266, 2013 WL 5511319, at *3 (W.D. Pa. Oct. 4, 2013) (allowing posted notice in the workplace where oil- and gas-industry workers were unlikely to receive ordinary mail due to their work responsibilities and being away from their homes for extended periods), is misplaced given the Court's authorization to serve the Notice by electronic and ordinary mail. The Court does not feel that three forms of notice are necessary or appropriate in this instance.

In sum: 1) Plaintiff shall serve the Notice once by electronic and ordinary mail at the beginning of the opt-in period; 2) no "reminder notice" shall be served; and 3) WGM is not required to post copies of the Notice in any of its workplaces.

### 5. Potential Liability in the Case of Unsuccessful Claims

WGM seeks to have the following language included in the Notice: "If you do not prevail on your claim, court costs and expenses may possibly be assessed against you." WGM here relies on the theory that "an award of costs to a prevailing defendant in an FLSA case is clearly possible and is not merely theoretical . . . [and] the notice should inform recipients about the

possibility that they may be responsible for court costs." *Creten-Miller v. Westlake Hardware, Inc.*, No. CIV.A. 08-2351, 2009 WL 2058734, at *4 (D. Kan. July 15, 2009).  Plaintiff counters that such a statement is only intended to serve as a deterrent to potential opt-in plaintiffs. Further, Plaintiff argues that the chilling effect outweighs the likelihood that opt-in plaintiffs will be held responsible for costs or counterclaim damages.

Courts across the country are split on this issue and both parties have cited cases from other circuits in support of their positions.  Curiously, both parties have cited *Heaps*, 2011 WL 1325207, in their briefing for various propositions, but the parties have failed to identify that *Heaps* addresses this very issue.  In *Heaps*, this Court stated, "[b]eing made aware of the possibility of being held liable for [Defendant's] costs of litigation is necessary information for potential plaintiffs to make an informed decision about whether to opt-in as a plaintiff. Certainly, issues of financial responsibility for the suit would play into that determination . . . ." *Id*. at *8 (citing *Baden-Winterwood v. Life Time Fitness*, No. 2:06-CV-99, 2006 WL 2225825, at *1 (S.D. Ohio Aug. 2, 2006) ("*Baden I*") (Frost, J.)).  Accordingly, the Notice shall contain a statement that the opt-in plaintiffs may be liable for WGM's costs if WGM ultimately prevails.

### 6.    Notice Period

Finally, Plaintiff proposes a 90-day notice period, but WGM argues that a 45-day window is appropriate.  Courts in this District have found 90 days to be an appropriate notice period on many occasions.  *See, e.g.*, *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *1 (S.D. Ohio Feb. 26, 2015) (Rice, J.); *Sisson v. OhioHealth Corp.*, No. 2:13-CV-517, 2013 WL 6049028, at *8 (S.D. Ohio Nov. 14, 2013) (Frost, J.); *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 181 (S.D. Ohio 2012) ("*Swigart II*") (Black, J.); *Musarra v. Digital Dish, Inc.*, No. C2-05-545, 2008 WL 818692, at *7 (S.D. Ohio Mar. 24, 2008) (Marbley, J.).

16

Here, Plaintiff alleges that many Inspectors have demanding work schedules which require them to be away from their homes for long periods of time.  That fact coupled with this Court's overwhelming acceptance of 90-day opt-in periods serves as sufficient grounds to follow suit here.  Accordingly, the notice period shall be 90 days.

The Court hereby **ORDERS** the parties to confer and submit a mutually agreed upon notice in accordance with the aforementioned determinations by **March 30, 2016**, to **smith_chambers@ohsd.uscourts.gov**.  In the event the parties are unable to reach a mutually satisfactory notice, each party shall submit a proposed notice on that same date.

**C.     Plaintiff's Motion for Equitable Tolling**

On January 11, 2016, Plaintiff filed a Motion for Equitable Tolling (Doc. 48) requesting that the Court toll the statute of limitations for opt-in plaintiffs from July 20, 2015—the date which Plaintiff filed their Motion to Certify—to ten days after the Court issues its Order on the Motion to Certify.  (Doc. 48, Toll. Mot. at 1).  Plaintiff later requested that the statute of limitations be tolled from September 8, 2015—the date that certification briefing was finalized—to ten days after the Court issues its Order on the Motion to Certify.  (Doc. 53, Toll. Reply at 2).  Plaintiff argues that potential opt-in plaintiffs will be deprived of their claims in whole or in part if the statute of limitations is not tolled.  (Doc. 49, Toll. Mot. at 7; Doc. 53, Toll. Reply at 7).  Conversely, WGM argues that it is not appropriate to invoke the extraordinary remedy of equitable tolling because: 1) putative class members are not currently before the Court; 2) the FLSA—through its statutory construction—contemplated that a delay would occur between the time lawsuits are filed and other plaintiffs opt in to the litigation; and 3) there is nothing extraordinary about this case to justify equitable tolling.  (Doc. 51, Toll. Resp. at 2).

Unlike Rule 23 class claims, the filing of a FLSA complaint does not toll the statute of limitations for all potential plaintiffs.  Rather, the statute of limitations continues to run on each

plaintiff's claims until they personally file their opt-in consent form. 29 U.S.C. § 256(b). The doctrine of equitable tolling "permits courts to extend the statute of limitations on a *case-by-case basis* to prevent inequity." *Baden-Winterwood v. Life Time Fitness*, 484 F.Supp.2d 822, 826 (S.D. Ohio 2007) ("*Baden II*") (Frost, J.) (emphasis added) (citing *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). The "equitable tolling doctrine is read into every federal statute." *Id.* (citing *U.S. v. $57,960.00 in U.S. Currency*, 58 F.Supp.2d 660, 664 (D.S.C. 1999)). It was clearly within Congress' contemplation that some time would lapse between the commencement of collective actions and the date that each opt-in plaintiff files his or her consent form. *Id*. Notably, however, Congress did not explicitly remove courts' ability to equitably toll the statute of limitations. *Id.* "The decision to invoke equitable tolling in a particular case, therefore, lies solely within the discretion of the trial court." *Id.* (citing *Truitt*, 148 F.3d at 648).

"A plaintiff bears the burden of demonstrating why he or she is entitled to equitably toll the statute of limitations in a particular case. *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010), *see also Allen v. Yukins,* 366 F.3d 396, 401 (6th Cir. 2004). The Supreme Court has made it abundantly clear that that equitable tolling should be granted only sparingly. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 90 (1990). The Sixth Circuit has adopted the same approach. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir. 2001). Thus, courts should grant equitable tolling only when the circumstances of the case are extraordinary and warrant equitable action. Typically, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561–62 (6th Cir. 2000) (citing *Baldwin Cnty.*, 466 U.S. at 151).

After Plaintiff filed his Motion for Equitable Tolling but before WGM responded, this Court issued a decision in *Lemmon*, 2016 WL 234854.  The facts of *Lemmon* were very similar to those here: Plaintiffs sought to toll the statute of limitations during the period of time in which the Court was considering their motion for conditional certification.  Plaintiffs sought to have the statute of limitations tolled ***for all putative plaintiffs who had not yet opted in***.  This Court, relying on this Court's ruling in *Atkinson*, 2015 WL 853234, plainly held that "the doctrine of equitable tolling is an individualized inquiry, inappropriate for group consideration in the context of an FLSA collective action."  *Lemmon*, 2016 WL 234854, at *8.

While *Lemmon* was not decided until after Plaintiff filed his Motion for Equitable Tolling, Plaintiff maintains that the present case is inapposite to *Lemmon* because the parties have conducted limited discovery and the identities of all Inspectors has been ascertained.  The identities of the *Lemmon* opt-in plaintiffs were not known to the named plaintiffs when that motion for equitable tolling was filed.  The Court fails to see the importance of this distinction.  Plaintiff relies on the following language from *Lemmon* in support of its position:

> The Court is not prepared to cast an extraordinary net extending the rights of putative plaintiffs when there is little to no specific information before the Court regarding their individual circumstances. Without the benefit of discovery, neither the Court—nor the parties— know the identity of all potential opt-in plaintiffs.

*Id*.  Plaintiff however, ignores the opinion's next line: "Once potential plaintiffs are identified ***and opt in to the class***, fact-finding will be required to determine whether each plaintiff satisfies the Sixth Circuit's five-factor test."  *Id*. (emphasis added).  Just because the identities of the opt-in plaintiffs are concrete and not abstract, there is still "little to no specific information before the Court regarding their individual circumstances."  The fact remains that the potential plaintiffs still have not have not opted into the lawsuit and they are not properly before the Court.

Both parties have correctly identified that the Sixth Circuit implements a five-factor test in deciding whether to apply the doctrine of equitable tolling in FLSA cases. Namely, courts examine (1) the petitioner's lack of actual notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 437 (6th Cir. 2007) (quoting *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001)). The parties have briefed the merits for tolling under these factors, but it is premature to consider these arguments at the present time.

The Court acknowledges that past decisions in this District have granted equitable tolling for all putative class members. *See Engel v. Burlington Coat Factory Direct Corp.*, No. 1:11-CV-759, 2013 WL 5177184 (S.D. Ohio Sept. 12, 2013) (Barrett, J.); *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842 (S.D. Ohio 2013) (Marbley, J.); and *Baden II*, 484 F. Supp. 2d. at 829. Similar to the course taken in *Lemmon*, the Court respectfully declines to follow the reasoning set forth in these three decisions and instead adopts the approach taken in *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234 (S.D. Ohio Feb. 26, 2015) (Rice, J.). It appears *Engel*, *Struck*, and *Baden II* were decided in the interest of judicial expediency rather than strictly adhering to the "case-by-case" approach set forth in *Truitt*. In *Atkinson*, this Court followed *Truitt* and took the approach that "the doctrine of equitable tolling is an individualized inquiry, inappropriate for group consideration in the context of an FLSA collective action." *Atkinson*, 2015 WL 853234, at *9. For the foregoing reasons, the Court agrees with the rationale of *Atkinson* and **DENIES** Plaintiff's Motion for Equitable Tolling.

In the alternative to equitable tolling, Plaintiff requests that the Notice "be sent to all potential Opt-In Plaintiffs who performed work for Wood Group from September 8, 2012 to the present." (Doc. 53, Toll. Reply at 2, 8). Plaintiff has shown that some Inspectors' claims have expired since the parties finished briefing class certification on September 8, 2015. Without suggesting the likelihood of success of any subsequent motions for equitable tolling, the Court feels that the most prudent approach is to afford notice to these potential plaintiffs. At this lenient stage, it is appropriate to notify all possible plaintiffs that may be similarly situated to Plaintiff. A plaintiff who was last employed by WGM on September 8, 2012, and who is able to satisfy the Sixth Circuit's five-factor test for equitable tolling may be similarly situated to Plaintiff and the Court will not bar their participation in this action at this early juncture. Plaintiff's request to have the Notice sent to all Inspectors who have worked for WGM since September 8, 2012, is **GRANTED**.

## IV.     CONCLUSION

Based on the foregoing, Plaintiff's Motion to Certify (Doc. 31) is **GRANTED**. The parties are hereby **ORDERED** to confer and submit a mutually agreed upon Notice in accordance with the terms of this decision. Plaintiff's Motion for Equitable Tolling (Doc. 48) is **DENIED**, but the Notice shall be sent to all Inspectors who have worked for WGM since September 8, 2012.

The Clerk shall **REMOVE** Documents 31 and 48 from the Court's pending motions list.

**IT IS SO ORDERED.**


     _/s/ George C. Smith_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**