**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**TOMMY L. FENLEY,**

   **Plaintiff,**

 **v.**          **Case No.: 2:15-cv-326**
              **JUDGE SMITH**
              **Magistrate Judge Jolson**

**WOOD GROUP MUSTANG, INC.,**

   **Defendant.**

## OPINION AND ORDER

This matter is before the Court on multiple motions: 1) Defendant Wood Group Mustang, Inc.'s ("WGM") Motion for Leave to File Interlocutory Appeal (Doc. 127); 2) WGM's Motion for Summary Judgment as to Plaintiffs Who are Untimely, Are Outside the Putative Class, and/or Who Refused to Participate in Discovery (Doc. 129); 3) WGM's Motion to Reopen Discovery (Doc. 136); 4) Plaintiffs' Motion for Equitable Tolling (Doc. 138); and 5) WGM's Motion to Withdraw Richard Ashley from Defendant's Motion for Summary Judgment (Doc. 143). All five motions are fully briefed and are ripe for disposition. For the following reasons:

1) WGM's Motion for Leave to File Interlocutory Appeal is **DENIED as moot**;

2) WGM's Motion for Summary Judgment is **GRANTED in part and DENIED in part**;

3) WGM's Motion to Reopen Discovery is **DENIED**;

4) Plaintiffs' Motion for Equitable Tolling is **DENIED**; and

5) WGM's Motion to Withdraw Richard Ashley from Defendant's Motion for Summary Judgment is **GRANTED**.

# I. BACKGROUND

As this Court has previously noted, this matter is based upon Defendant's treatment of various Inspectors as exempt from the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code Chapter 4111, *et seq.* ("OMWA"), the Pennsylvania Minimum Wage Act, 43 P. S. § 333.104(c); 34 Pa. Code § 231.41 ("PMWA"), and the Illinois Minimum Wage Law ("IMWL") 820 Ill. Comp. Sta. 105 § 4a (1). (*See* Doc. 126, Op. and Ord. at 1–2). On March 30, 2018, this Court issued an Opinion and Order in which it granted Plaintiffs' Motion for Rule 23 Class Certification and denied WGM's Motion to Decertify Plaintiffs' Conditionally Certified FLSA Class. (Doc. 126, Op. and Ord.). In reaching these conclusions, this Court ultimately determined that "the outcome of this matter is dependent on whether the Inspectors' salaries [were] in fact guaranteed, or whether [they were] simply something that [Defendant] had not so far availed itself of its right to reduce." (*Id*. at 14) (internal quotations omitted). Further, in the context of this Court's FLSA decertification analysis, this Court found that the differences among the plaintiffs simply did not outweigh the similarities of the practices to which they were allegedly subjected. (*Id.* at 22). Similarly, in the context of this Court's Rule 23 class certification analysis, this Court found that "Plaintiffs' claims and WGM's defenses are common to all Inspectors and resolution of that central issue is certainly likely to drive resolution of this case." (*Id.* at 27).

In the wake of this Court's March 30 Opinion and Order, WGM petitioned the Sixth Circuit for permission to appeal that Opinion and Order as it pertains to the certification of Plaintiffs' Rule 23 classes. (Doc. 128, WGM Appeal Mem. at 1, fn. 1). *See also*, *In re: Wood Group Mustang, Inc.*, No. 18-304 (6th Cir. Aug. 24, 2018). WGM now seeks to have this Court

certify for interlocutory appeal the portion of the March 30 Opinion and Order pertaining to the decertification of the FLSA collective action. In addition, WGM has moved: 1) for summary judgment to preclude several of the opt-in plaintiffs from participating in this collective action due to either their failure to participate in discovery or because they are outside the putative class (Doc. 129); 2) to strike one of the FLSA Plaintiffs from its motion for summary judgement (Doc. 143); and 3) to reopen discovery for the "limited purpose" of deposing each and every FLSA Plaintiff and Rule 23 Class Member (Doc. 136). Finally, Plaintiffs have moved for equitable tolling for a certain subset of the FLSA Plaintiffs (Doc. 138). The Court will identify the facts relevant to each motion in the corresponding section below.

## II. DISCUSSION

### A. WGM's Motion for Leave to File Interlocutory Appeal

As noted above, WGM petitioned the Sixth Circuit for permission to appeal this Court's March 30, 2018 Opinion and Order as it pertains to the certification of Plaintiffs' Rule 23 classes and decertification of the FLSA collective action. (Doc. 128, WGM Appeal Mem. at 1, fn. 1). *See also*, *In re: Wood Group Mustang, Inc.*, No. 18-304. Despite the fact that this Court had not yet ruled on WGM's Motion for Leave to File Interlocutory Appeal, WGM's petition included extensive references to this Court's denial of its motion to decertify the FLSA class. Indeed, WGM included relief from that ruling in its "Questions Presented" and "Relief Sought." *See* Amended Petition for Leave to Appeal at 6, *In re: Wood Group Mustang, Inc.*, No. 18-304 (6th Cir. Aug. 24, 2018). On August 24, 2018, the Sixth Circuit issued an order denying WGM's petition. The court noted:

> With respect to the district court's denial of WGM's motion to decertify the case as a FLSA collective action, it appears that the ruling is neither final nor appealable pursuant to the collateral order exception to the final judgment rule. *See, e.g., Taylor v. Pilot Corp.*, 16-3526, 697 F. App'x 854, 858 (6th Cir. 2017). Rather than decide the issue, we have weighed the *Delta* factors and conclude

they do not support immediate review of either the class certification order or the denial of WGM's motion to decertify.

Petition Order at 2, *In re: Wood Group Mustang, Inc.*, No. 18-304 (6th Cir. Aug. 24, 2018).

Accordingly, even though WGM's Motion for Interlocutory Appeal had not yet been decided, the Sixth Circuit has explicitly stated that it has considered the matter and found immediate appeal to be inappropriate. Consistent therewith, WGM's Motion for Interlocutory Appeal is **DENIED as moot.**

**B.  WGM's Motion for Summary Judgment**

WGM's Motion for Summary Judgment seeks to have the claims of 24 individuals dismissed with prejudice. The purported reasons for which are as follows: Fourteen (14) for claims that are time barred, eight (8) for failure to participate in discovery, and two (2) for being outside the defined FLSA and Rule 23 classes. There are several preliminary issues to address before delving into the merits of WGM's Motion. The summary judgment briefing—and at least one other filing—contain alterations and concessions that affect the original motion's scope and breadth. The following chart reflects the present state of those individuals germane to WGM's Motion for Summary Judgment:

| Name | Purported Reason for Inclusion in Motion for Summary Judgment | Present Status |
|---|---|---|
| Deborah Keyes | Outside of class definitions | Conceded by Plaintiffs |
| Rebecca Robbins | " " | " " |
| | | |
| Merlin D. Green | Failure to participate in discovery | Pending before the Court |
| Jerrod A. Kizzire | " " | " " |
| Deborah S. Miller | " " | " " |
| Richard Pearson | " " | " " |
| James Sumrall | " " | " " |
| James L. White | " " | " " |
| Terry White | " " | " " |
| Richard Ashley | " " | Withdrawn by WGM (Doc. 143) |
| | | |
| Glenn D. Brochard | Barred by statute of limitations | Pending before the Court |

| | | | |
|---|---|---|---|
| Jeremy Gabell | " | " | " | " |
| Robert Hughes | " | " | " | " |
| John Kendricks III | " | " | " | " |
| David Michael | " | " | " | " |
| Douglas Nicholas | " | " | " | " |
| Ronnie Oakes | " | " | " | " |
| Anthony Snell | " | " | " | " |
| James Washburn | " | " | " | " |
| Lewis Whitmire | " | " | " | " |
| Erasmo Enriquez | " | " | Conceded by Plaintiffs | |
| Robert Galvan | " | " | " | " |
| Ronnie Stanley | " | " | " | " |
| George C. Wiley II | " | " | " | " |

Opt-in Plaintiffs Deborah Keyes and Rebecca Robbins both held "Office Clerk" positions while employed by WGM and were never employed as Inspectors. (Doc. 129-8, Payroll Records). As such, Keyes and Robbins were never proper members of the FLSA class, and Plaintiffs admit as much. However, Plaintiffs request that Keyes and Robbins be dismissed without prejudice and be afforded a tolling period of 30 days because they have viable wage claims and wish to pursue those claims separate from the present collective. (Doc. 140, Pls.' Summ. J. Resp. at 20). The Court will not bar Keyes and Robbins from pursuing their claims outside of the present action, but Plaintiffs have not offered any evidence to suggest that tolling the statute of limitations for two plaintiffs who are clearly situated outside the scope of the approved FLSA and Rule 23 classes would be appropriate. Accordingly, it is hereby **ORDERED** that Keyes and Robbins are **DISMISSED without prejudice**.

Next, Plaintiffs concede that Erasmo Enriquez, Ronnie Stanley, and George C. Wiley, II all ended their employment with WGM more than three years prior to the filing their consent forms and they are not proper Rule 23 class members. (Doc. 140, Summ. J. Resp. at 2, fn. 1). Less clear is the case of Robert Galvan. At the time of Plaintiffs' response to WGM's Motion for Summary Judgment, Plaintiffs advised that they were seeking additional information

regarding Galvan's last date of employment and that Plaintiffs "would file a supplemental position statement once receiving additional confirmation." (*Id.*). The Court has received no such notification, but additional filings lead this Court to believe that Plaintiffs have likewise conceded that Galvan's claims are barred by the statute of limitations. (*See* Doc. 145, WGM Summ. J. Rep. at 5, fn. 12 ("WGM has reviewed its records and confirmed that [Galvan] did *not* work for WGM during the three years prior to the filing of his consent form." (emphasis in original)); Doc. 139, Pls.' Eq. Tolling Memo at 1, fn. 1 (specifically incorporating Plaintiffs' arguments concerning ten (not eleven) Opt-In Plaintiffs)). Accordingly, it is hereby **ORDERED** that Enriquez, Stanley, Wiley, and Galvan are **DISMISSED with prejudice**.

Finally, WGM filed an unopposed Motion to Withdraw Richard Ashley from its Motion for Summary Judgment (Doc. 143). Ashley was included in WGM's Motion for Summary Judgment in error. Accordingly, WGM's Motion to Withdraw Richard Ashley from its Motion for Summary Judgment (Doc. 143) is **GRANTED**.

WGM's efforts to dismiss 10 Opt-In Plaintiffs on the grounds that their claims are barred by the statute of limitations are more appropriately addressed within the context of Plaintiffs' Motion for Equitable Tolling, which was filed the same day Plaintiffs responded to WGM's Motion for Summary Judgment. Indeed, the majority of the parties' briefing related to time-barred claims focuses on the applicability of equitable tolling. As such, the Court will address these arguments in the following section.

The only remaining subset of Opt-In Plaintiffs are those seven individuals who WGM seeks to have dismissed on the basis of their alleged failure to participate in discovery. The Court will now turn to those claims.

### 1. Summary Judgment Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of

fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

## 2.     Law and Analysis

Plaintiffs contend that WGM has framed its motion as one for summary judgment when in reality, it is actually a procedurally deficient motion for sanctions. This Court agrees with Plaintiffs. This district employs a clearly delineated process for handling parties who are alleged to be uncooperative during the pendency of the discovery period. These procedures are controlled by Federal Rule of Civil Procedure 37 and Local Rule 37.1.

Federal Rule of Civil Procedure 37(a)(1) provides that a party filing a Rule 37(d) discovery motion must provide "notice to other parties and all affected persons" and "the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). In addition, Local Rule 37.1 requires that prior to bringing a discovery motion counsel must "have first exhausted among themselves all extrajudicial means for resolving the differences." S.D. Ohio Civ. R. 37.1. A party's failure to appear at a deposition is only actionable if that deposition was properly noticed. *Bricker v. R & A Pizza, Inc.*, No. 2:10-CV-278, 2011 WL 3941982, at *6 (S.D. Ohio Sept. 6, 2011) (Kemp, M.J.). In addition, Rule 37 motions are often denied where they are not brought until after the close of discovery. (*See e.g. Glenn v. Scott Paper Co.*, No. CIV. A. 92-1873, 1993 WL 431161, at *17 n.3 (D.N.J. Oct. 20, 1993) (motion for sanctions brought during summary judgment phase

after close of discovery untimely where party bringing motion at no time during discovery contacted magistrate judge or moved to compel); *see also McGhee v. Buffaloe & Assocs., PLC*, No. 2:12-CV-333-CLC-SKL, 2013 WL 11478554, at *2 (E.D. Tenn. Dec. 20, 2013) (collecting cases)). Dismissal under Rule 37 for failure to cooperate in discovery is "the sanction of last resort." *Martin v. City of Memphis*, No. 06-2429, 2008 WL 276479, at *2 (W.D. Tenn. Jan. 30, 2008) (citing *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994)). Dismissal is appropriate "only if the court concludes that a party's failure to cooperate is due to willfulness, bad faith, or fault." *Regional Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 153–54 (6th Cir. 1988). When determining if dismissal is warranted, courts must first determine: "1) whether the disobedient party acted in willful bad faith; 2) whether the opposing party suffered prejudice; 3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and 4) whether less drastic sanctions were imposed or considered." *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008) (citing *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir.1990)).

WGM cites *Getachew v. S&K Famous Brands, Inc.*, No. 2:06-CV-633, 2008 WL 533806 (S.D. Ohio Feb. 27, 2008) (Sargus, J.) in support of its position that dismissal at the summary judgment stage is appropriate for a party's failure to engage in discovery. *Getachew* is not analogous to the instant case. First, the *Getachew* Court clearly established that plaintiff was seeking dismissal pursuant to Rule 37, even though the issue was raised at the summary judgment stage. ("Defendant seeks dismissal of Plaintiff's claims under Fed.R.Civ.P. 37(b)(2)(A).") *Id.* at *3. Accordingly, *Getachew* did not, as WGM seemingly urges the Court to do here, consider dismissal in a vacuum absent of Rule 37 considerations. This is made clear by the *Getachew* court's discussion of the procedural history and court intervention throughout the

discovery process.  Here, unlike *Getachew*, the Court was never asked to intervene to facilitate the depositions of any of parties WGM now seeks to have dismissed.  This is a key distinction and is not without consequence.

Here, WGM did not avail itself of Rule 37's well-established procedures—even if they assumed them to be futile.  Instead, WGM now seeks to sidestep these procedural requirements—over one year after the close of discovery at the time of its motion—and have this Court dismiss the claims of seven FLSA plaintiffs without them ever having received notice that their claims could be in jeopardy if they were not more compliant with the discovery process.  This is precisely the situation the Rule 37 seeks to avoid.  While it appears that the individual plaintiffs cited by WGM are not entirely without blame, there is no evidence to suggest that the relevant plaintiffs acted with bad faith, that they were provided notice that their alleged disobedience could result in the termination of their claims[1], and no lesser sanctions were imposed or considered.  Accordingly, this Court is not prepared to dismiss those individuals' claims when they were not afforded the procedural safeguards set forth in Rule 37 and Local Rule 37.1.  As such, WGM's Motion for Summary Judgment, as it pertains to putative plaintiffs Green, Kizzire, Miller, Pearson, Sumrall, White, and White is **DENIED**.

## C.     WGM's Motion to Reopen Discovery

WGM has moved to reopen discovery because it argues that the threshold issue in this case, *i.e.*, whether Plaintiffs received a weekly guarantee sufficient to satisfy the salary-basis test, requires individualized fact-finding.  WGM's argument centers around two controlling cases that

---

[1] The Court Supervised Notice in this case did include a sentence that Opt-In plaintiffs, if they elected to join the lawsuit, "may be required . . . to respond to written questions, attend a deposition or testify in court . . . " (Doc. 31-3, Proposed Notice).  Notably, the Notice did not warn Opt-In plaintiffs of the possible repercussions of failing to cooperate in discovery.  Even if the Notice did contain a more definite statement regarding possible forfeiture of claims, this Court is not prepared to label such as an adequate substitute for the requirements set forth in Rule 37.

were decided after the close of discovery and before this Court ruled on WGM's Motion to Decertify Plaintiffs' Conditionally Certified FLSA Class and Plaintiffs' Motion for Rule 23 Class Certification. *See Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017); *Encino Motocars v. Navarro*, 138 S.Ct. 1134 (Apr. 2, 2018). WGM argues that *Hughes* and *Encino Motorcars* shifted the legal framework in such a manner that discovery should be reopened and Plaintiffs be afforded the opportunity to depose all FLSA Opt-In Plaintiffs and Rule 23 Class Members. Plaintiffs counter that WGM's request is untimely, overly burdensome, and lacking good cause.

### 1.  Legal Standard for Reopening Discovery

A trial court has broad discretion in deciding whether to reopen discovery. *Ziegler v. Krisher*, No. 2:14-CV-321, 2016 WL 8135536, at *1 (S.D. Ohio Dec. 22, 2016) (Graham, J.) (citing *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, No. C-3-06-371, 2008 WL 2977891, at *11 (S.D. Ohio July 29, 2008)). When making this determination, courts in this Circuit consider the following five factors:

> (1) whether the movant has demonstrated good cause for reopening discovery; (2) whether the need for additional discovery was precipitated by the neglect of the movant or by the party opposing the motion to reopen; (3) the specificity of the discovery that is sought; (4) the relevance of the discovery being sought; and (5) whether the party opposing the motion to reopen discovery will be prejudiced.

*U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, No. C-3-06-371, 2008 WL 2977891, at *11 (S.D. Ohio July 29, 2008) (citing y. *Morgan v. Gandalf, Ltd.,* 165 F. App'x 425, 431 (6th Cir. 2006)).

### 2.  Analysis

After two extensions of time, the 22-month discovery period in this case closed on March 15, 2017. WGM now seeks to reopen discovery for the purpose of deposing all FLSA Opt-In

Plaintiffs and Rule 23 Plaintiffs because WGM feels that Plaintiffs' claims all require individual fact-finding to determine whether or not a weekly rate guarantee existed.  As noted above, WGM purports that the *Hughes* decision, along with *Encino Motorcars*, shifts the legal framework under which this case should be conducted.

*Hughes* was decided on December 19, 2017.  The parties held a status conference with the Magistrate Judge approximately one month later and discussed the potential impact of the *Hughes* decision.  *Encino Motorcars* was decided on April 2, 2018—three days after this Court's March 30, 2018 Opinion and Order concerning the Rule 23 and FLSA class certifications.  Despite all of these facts, WGM did not move to reopen discovery until nearly two months after this Court's March 30, 2018 Opinion and Order.  Against this backdrop, the Court will now examine each of the five factors used by courts in this Circuit to determine if it is appropriate to reopen discovery.

### a.      Good Cause

The primary basis for Plaintiff's contention that good cause exists to reopen discovery is that the *Hughes* decision now requires individualized fact-finding to determine whether individual Plaintiffs were given a weekly rate guarantee.  (Doc. 137, WGM Br. at 4).  On the other hand, Plaintiffs argue that *Hughes* does not represent a monumental shift in the law concerning the salary-basis test, but rather, it clarifies and is consistent with prior Sixth Circuit holdings.  (Doc. 144, Pls.' Br. at 5–7).

This Court is not persuaded by WGM's argument that *Hughes* established the requirement that a guarantee existed and that employers must be able to prove its existence.  This is evident by the court's acknowledgment that "[t]he section defining the salary-basis test, § 541.602(a), itself indicates the importance of a guarantee: it provides that what 'the employee

regularly receives each pay period' must not be 'subject to reduction because of variations in the quality or quantity of the work performed.' " *Hughes*, 878 F.3d at 190 (quoting 29 C.F.R. § 541.602(a)). Thus, *Hughes clarified* that the presence of a guarantee is inherently required by the statute's language. (". . . whether one looks to the phrase "includes a guarantee," 29 U.S.C. § 541.604(b), or to the phrase "which amount is not subject to reduction," 29 C.F.R. § 541.602(a), it is legally significant whether Hughes and McDonald's weekly salary was a matter of right or a matter of grace." *Id.* at 191). As Plaintiffs point out, the court in *Hughes* further clarified that its holding was not a departure from its prior holding in *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843 (6th Cir. 2012),

This Court is similarly unpersuaded by WGM's argument that *Hughes* established a need for individualized fact-finding to determine whether a guarantee existed, and thus, rendering class or collective treatment inappropriate here. The *Hughes* Court contemplated that the parties may present competing evidence to the jury to determine whether a guarantee existed, but it did not hold those inquiries to be so intensive that the benefits of proceeding collectively were overwhelmed. *Hughes*, 878 F.3d at 192. This Court has previously reached the same conclusion with regard to the commonality of the claims and defenses in the present case. (Doc. 126, Op. and Ord. at 31). As a final note, WGM argues that the holding in *Encino Motors* lessens the burden on employers to establish FLSA exemptions, but even accepting WGM's reading of the case, WGM does not offer any compelling argument as to why *Encino* Motors' holding should result in discovery being reopened here.

For the foregoing reasons, the first factor weighs against reopening discovery.

### b. Neglect as Reason for Needing Additional Discovery

The second factor requires the Court to determine whether either party was negligent in causing the additional discovery to be sought. WGM deposed 15 of the over-100 Plaintiffs and obtained additional information through written discovery. However, WGM argues that it needs additional discovery because of its view that the *Hughes* decision now requires individualized inquiries directed to each of the Plaintiffs. While the Court has already stated that it views *Hughes* as a clarification of the Sixth Circuit's position on guarantees as opposed to an establishment of new standards, WGM's prior understanding of the caselaw does not rise to the level of negligence. There is also no suggestion that Plaintiffs were so negligent in responding to discovery that depositions of every single Plaintiff are warranted. Accordingly, this factor does not cut strongly in either party's favor.

### c. Specificity of Evidence Sought

The third factor also weighs in favor or Plaintiffs. WGM seeks to take the deposition of each and every Opt-In and Class Plaintiff—over 100 individuals. Plaintiffs contend that permitting discovery this broad in nature would undermine the purpose of proceeding collectively and is not appropriate, even if WGM's request were timely. (Doc. 144, Pls.' Br. at 8).

Although Plaintiffs contend that WGM "has not and can not support its argument that individualized discovery of certified class and collective actions is appropriate, even if it were not untimely" this is not the case. This Court has previously stated that "there are two lines of cases regarding individualized discovery in opt-in class actions. One holds that individualized discovery is not appropriate in a Rule 23 class action and, by analogy, inappropriate in a Section 216(b) class action. Other cases permit individualized discovery of opt-in plaintiffs." *Wade v.*

*Werner Trucking Co.*, No. 2:10-CV-270, 2014 WL 1091707, at *26 (S.D. Ohio Mar. 18, 2014) (Sargus, J.) (citing *Gentrup v. Renovo Servs., LLC*, No. 1:07-CV-430, 2010 WL 6766418, at *4 (S.D. Ohio Aug. 17, 2010); *see also Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 357–58 (S.D. Ohio 2006) (King, M.J.) (holding that "limiting discovery to a statistically significant representative sampling [*during the pendency of discovery*] will both reasonably minimize the otherwise extraordinary burden imposed on the plaintiffs and their counsel and yet afford the defendant a reasonable opportunity to explore, discover and establish an evidentiary basis for its defenses."). Notably, both *Wade* and *Smith* were decided during the pendency of discovery, as opposed to after discovery had closed as is the case here. Therefore, contrary to Plaintiffs' position, it is not unprecedented for courts to allow individualized discovery in FLSA cases under some circumstances. However, "[i]t is in this Court's discretion to determine what line of cases is most applicable to the specific facts of the instant case," *Gentrup*, 2010 WL 6766418, at *4. Discovery has been closed for a considerable length of time in this case and the Court does not find it appropriate to reopen discovery for the extensive relief currently sought by WGM. It is this Court's opinion that such broad discovery would defeat the purpose of proceeding collectively.

### d. Relevance of Discovery Sought

This Court has previously held that the central issue in this case "is common to all Inspectors and is subject to common proof." (Doc. 126, Op. and Ord. at 19). Further, WGM has previously stated in a sworn interrogatory response that "All class members were guaranteed a weekly salary based on a day rate of 5, 6, or 7 days dependent on the particular project." The Court's prior findings will remain unchanged and WGM's own admission weakens its argument

that individualized discovery is needed for each Opt-In and Rule 23 Class Member. Accordingly, this factor weighs against reopening discovery.

### e.     Whether Plaintiffs will be Prejudiced

Finally, this Court must determine whether it would be prejudicial to Plaintiffs to reopen discovery for WGM's requested purpose.  WGM's requested discovery would likely entail briefing on a protective order, additional notice being sent to class members, and the logistical nightmare of scheduling depositions for more than 100 FLSA and Rule 23 Plaintiffs.  The problems associated with this final step (*i.e.*, the actual scheduling of and conducting depositions) are compounded by the fact that many Plaintiffs work rigorous schedules and are away from their homes, working in the field for weeks or months at a time.  In short, the sheer scope of WGM's proposed discovery coupled with the requisite time, expense, and effort of facilitating said discovery makes reopening discovery highly prejudicial to Plaintiffs.

For the foregoing reasons, WGM has failed to show that this Court should reopen discovery at this juncture of the litigation.  Accordingly, WGM's Motion to Reopen Discovery is **DENIED**.

## D.     Plaintiffs' Motion for Equitable Tolling

On January 11, 2016, Plaintiff filed a Motion for Equitable Tolling (Doc. 48) requesting that the Court toll the statute of limitations for Opt-In Plaintiffs from July 20, 2015—the date which Plaintiff filed their Motion to Certify—to ten days after the Court issues its Order on the Motion to Certify.  (Doc. 48, Toll. Mot. at 1).  Plaintiff later requested that the statute of limitations be tolled from September 8, 2015—the date that certification briefing was finalized—to ten days after the Court issues its Order on the Motion to Certify.  (Doc. 53, Toll. Reply at 2). On March 17, 2016, this Court denied the motion on the grounds that the Opt-In Plaintiffs were not presently before the Court.  (Doc. 54, Cond. Cert. Ord. at 19).

Plaintiffs have now filed a second Motion for Equitable Tolling seeking to toll the statute of limitations from September 8, 2015, the date of Plaintiffs' reply in support of their Motion to Facilitate Notice to June 1, 2016, the date the Notice was ultimately issued. (Doc. 139, Eq. Toll. Mot. at 1). WGM contends there are no extraordinary circumstances present that warrant the invocation of this discretionary remedy.

### 1. Equitable Tolling Legal Framework

Unlike Rule 23 class claims, the filing of a FLSA complaint does not toll the statute of limitations for all potential plaintiffs. Rather, the statute of limitations continues to run on each plaintiff's claims until they personally file their opt-in consent form. 29 U.S.C. § 256(b). The doctrine of equitable tolling "permits courts to extend the statute of limitations on a ***case-by-case basis*** to prevent inequity." *Baden-Winterwood v. Life Time Fitness*, 484 F.Supp.2d 822, 826 (S.D. Ohio 2007) ("*Baden II*") (Frost, J.) (emphasis added) (citing *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). The "equitable tolling doctrine is read into every federal statute." *Id.* (citing *U.S. v. $57,960.00 in U.S. Currency*, 58 F.Supp.2d 660, 664 (D.S.C. 1999)). It was clearly within Congress' contemplation that some time would lapse between the commencement of collective actions and the date that each opt-in plaintiff files his or her consent form. *Id.* Notably, however, Congress did not explicitly remove courts' ability to equitably toll the statute of limitations. *Id.* "The decision to invoke equitable tolling in a particular case, therefore, lies solely within the discretion of the trial court." *Id.* (citing *Truitt*, 148 F.3d at 648).

"A plaintiff bears the burden of demonstrating why he or she is entitled to equitably toll the statute of limitations in a particular case. *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010), *see also Allen v. Yukins,* 366 F.3d 396, 401 (6th Cir. 2004). The Supreme Court has made it abundantly clear that equitable tolling should be granted only sparingly. *Baldwin Cnty.*

*Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 90 (1990). The Sixth Circuit has adopted the same approach. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir. 2001). Thus, courts should grant equitable tolling only when the circumstances of the case are extraordinary and warrant equitable action. Typically, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561–62 (6th Cir. 2000) (citing *Baldwin Cnty.*, 466 U.S. at 151). Generally, a party is entitled to equitable tolling only if he can show: "(1) he has pursued his rights diligently; and (2) some extraordinary circumstance prevented timely filing." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citing *Holland v. Fla.*, 560 U.S. 631, 649 (2010)). After that showing has been made, the Sixth Circuit has identified the following list of non-exhaustive factors to be considered when determining whether to apply equitable tolling: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 437 (6th Cir. 2007) (quoting *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001)).

### 2. Equitable Tolling Analysis

When this Court denied Plaintiffs' first motion for equitable tolling, it relied on *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *9 (S.D. Ohio Feb. 26, 2015) for its holding that "the doctrine of equitable tolling is an individualized inquiry, inappropriate for group consideration in the context of an FLSA collective action." *See also Lemmon v. Harry & David Operations, Inc.*, No. 2:15-CV-779, 2016 WL 234854, at *8 (S.D. Ohio Jan. 20, 2016)

(Smith, J.) (holding the same). Plaintiffs are now before the Court seeking the same blanket relief they did in 2016, and the Court finds no reason to depart from its prior reasoning. There is an inherent, and in this Court's view, strict individual component fundamental to equitable tolling. It is not enough for Plaintiffs to group all of the Opt-In Plaintiffs together for any equitable-tolling purposes. *See Atkinson*, 2015 WL 853234, at *10 ("**individual** opt-in plaintiffs may file motions to equitably toll their claims, if circumstances so justify.") (emphasis added); *see also Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1046 (S.D. Ohio 2018) (Watson, J.) (finding it necessary for courts to undergo fact-specific, case-by-case determination that specific circumstances justify the tolling of an **individual** plaintiff's claims.) (emphasis added). Accordingly, this Court will look at the individual circumstances of each Plaintiff to see if they meet the criteria set forth in *Dunlap*.

Presently before the Court are eight declarations of Opt-In Plaintiffs for which Plaintiffs seek to toll the statute of limitations. Outside of these eight individuals, insufficient information exists for this Court to evaluate the Sixth Circuit's five-factor test regarding the propriety of tolling the statute of limitations. The first group ("Group 1") consists of two Opt-In Plaintiffs who admit to having knowledge of the lawsuit as early as June 2015 but did not opt in to the lawsuit until they received the official Court-Supervised Notice in June 2016 (Plaintiffs Nicholas and Whitmire). The second group ("Group 2") consists of six Opt-In Plaintiffs who do not recall receiving any information regarding the lawsuit until they received the official Court-Supervised Notice in June 2016 (Plaintiffs Michael, Washburne, Gabell, Hughes, Oakes, and Snell). Because the facts relevant to each group are uniform with respects to each of its members, the Court will acknowledge each of these groups collectively.

Before the Court considers the Sixth Circuit's five factors for equitable tolling, it is important to note that these factors must be viewed against the backdrop that equitable tolling is to be used sparingly and is generally only warranted under exceptional circumstances. Simply stated, the Court does not find any extraordinary circumstances exist here. The Court granted Plaintiffs' motion for conditional certification just over six months after the motion was filed. An additional delay of several months in sending the Court Supervised Notice was due to the parties' inability to submit a mutually-agreed-upon Notice form. These delays are not atypical of FLSA cases and were within Congress' contemplation when it elected to toll the statute of limitations only when individual plaintiffs opt in to the lawsuit. To freely toll the statute of limitations for every FLSA plaintiff who did not have actual or constructive knowledge of the filing requirement would undermine congressional intent.

When weighing the five factors for Group 1, it is clear that Plaintiffs Nicholas and Whitmire had actual or constructive notice of the filing requirements and did not diligently pursue their rights and/or act reasonably in remaining ignorant of the legal requirement for filing their claims. This is supported by the fact that nearly 40 other Opt-In Plaintiffs received similar correspondence in June 2015 and promptly opted into the lawsuit. Plaintiffs in Group 2 have declared they did not receive any correspondence prior to prior to June 2016, but do not explain how or why they did not receive correspondence in 2015, but then received correspondence in 2016 that was distributed by identical means. That is, Plaintiffs in Group 2 were either negligent in receiving and opening the 2015 notice or they were willfully ignorant of the mailing and the contained notice. In either case, Plaintiffs in Group 2 do not appear to have been diligent in the pursuit of their rights or reasonable in remaining ignorant of the filing requirement.

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Equitable Tolling.

### III. CONCLUSION

Based on the foregoing:

1) WGM's Motion for Leave to File Interlocutory Appeal is **DENIED as moot**;

2) WGM's Motion for Summary Judgment is **GRANTED in part and DENIED in part**;

3) WGM's Motion to Reopen Discovery is **DENIED**;

4) Plaintiffs' Motion for Equitable Tolling is **DENIED**; and

5) WGM's Motion to Withdraw Richard Ashley from Defendant's Motion for Summary Judgment is **GRANTED**.

It is further **ORDERED** that the parties contact Magistrate Judge Jolson's chambers to schedule a mediation during the December 2018 Settlement Week.

The Clerk shall **REMOVE** Documents 127, 129, 136, 138, and 143 from the Court's pending motions list.

> **IT IS SO ORDERED.**

> */s/ George C. Smith*
> **GEORGE C. SMITH, JUDGE**
> **UNITED STATES DISTRICT COURT**